**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARVIN R.V., | Civil Action No. 20-5225 (CCC) |
| Petitioner, | **OPINION** |
| v. | |
| JOHN TSOUKARIS, et al., | |
| Respondents. | |

**CECCHI, District Judge:**

Presently before the Court is Petitioner Martin R.V.'s ("Petitioner") motion seeking a temporary restraining order in this habeas matter. ECF No. 2. The Government filed opposition to the motion (ECF Nos. 10–12, 21), to which Petitioner replied (ECF Nos. 13–14). For the reasons set forth below, Petitioner's motion is denied without prejudice.

**I. BACKGROUND**

Petitioner is a native and citizen of El Salvador who first entered the United States illegally at some time prior to July 2010 without admission or inspection. ECF No. 10-7 at 2. In early August 2010, Petitioner was taken into immigration custody and placed in removal proceedings which resulted in his removal to El Salvador in October 2010. Id.; ECF No. 10-8 at 4. Petitioner thereafter illegally re-entered the United States, and was removed in January 2013. Id. Petitioner continued to illegally re-enter the United States, however, and was removed to El Salvador again in May 2013 and in January 2015. Id. Unperturbed, Petitioner most recently illegally re-entered the United States in 2015. ECF No. 1-2. In October 2016, Petitioner was arrested for resisting an officer, was convicted, and was sentenced to three years in prison. Id.; ECF No. 10-8 at 3–4.

Petitioner was also convicted of resisting an officer on a separate occasion, which resulted in an additional five-year prison sentence imposed in July 2017. ECF No. 10-8 at 3. While in jail in November 2016, the Government served him with notice of the reinstatement of his 2010 removal order and their intent to remove him once again upon the conclusion of his prison sentence. Id. at 4–5. In 2017, Petitioner developed hypertension, for which he was prescribed Lisinopril. ECF No. 1-2 at 2.

Following his release from prison in November 2019, Petitioner was transferred into immigration detention at the Essex County Correctional Facility (the "Facility") pending his removal from the United States. ECF No. 1-2 at 2. Although Petitioner is subject to a reinstated administratively final order of removal, because Petitioner was found to have expressed a credible fear of persecution upon his return to El Salvador in December 2019, Petitioner has been placed in withholding only proceedings, which appear to be ongoing. ECF No. 10-10 at 2.

Upon his arrival at the Facility on November 27, 2019, Petitioner was given an intake screening by a facility nurse. ECF No. 11 at 47. During this screening, Petitioner reported being prescribed both Lisinopril and aspirin once a day for his hypertension, as well as Flomax once a day for urinary issues. Id. at 48, 53. Petitioner also received an intake tuberculosis chest x-ray, which indicated no sign of illness. Id. at 51–53. On November 28, 2019, Petitioner was seen by a nurse practitioner. Id. at 53–54. During this interview, Petitioner reported having issues with peeling skin on his feet, for which he was prescribed a topical cream. Id. at 54–56. The practitioner also ordered diagnostic blood tests and advised Petitioner to continue to take his medication. Id.

On December 10, Petitioner returned to the medical department and requested shampoo to help with dandruff, which he was provided. Id. at 58–60. In early January, Petitioner's blood tests were completed, resulting in medical staff advising Petitioner to engage in diet and exercise. Id. at

60–66. Petitioner also received an electrocardiogram on January 6, 2020. Id. at 66. That same day, Petitioner made a sick call visit and requested a different cream for his feet, which he was provided. Id. at 67–69. Petitioner returned to the medical unit on January 13 after he fell on his back, and was prescribed ibuprofen for pain. Id. at 70–73. On February 1, Petitioner was seen on a dental referral as he had a swollen jaw and a bleeding tooth. Id. at 73–74.

On February 24, 2020, Petitioner returned to the medical unit for a follow-up related to nasal congestion and his foot issues, resulting in his being provided Claritin. Id. at 75–78. During this evaluation, the nurse practitioner noted that Petitioner's hypertension was in good control and improving. Id. at 78. Petitioner thereafter received a dental exam on March 4, 2020, resulting in his being prescribed antibiotics and pain medication. Id. at 79–80. On March 11, 2020, Petitioner refused a scheduled extraction of the affected tooth. Id. at 82. On March 25, Petitioner once again sought more cream to treat his peeling skin on his feet, which he was provided. Id. at 84–85. On April 2, Petitioner sought help for difficulty breathing, which was determined to be the result of nasal allergies. Id. at 86–89. Petitioner was advised to take more anti-histamines, which he was provided. Id. at 89.

On April 14, Petitioner sought treatment for back pain and asked for a new cholesterol test. Id. at 91–92. Petitioner was prescribed a muscle rub and pain medication for his back, and a new lipid panel was ordered for his cholesterol. Id. at 93–98. Because Petitioner had elevated Alanine Aminotransferase ("ALT") levels, a hepatitis test was ordered and Petitioner was again advised to engage in dieting and exercise. Id. at 98. On April 19, Petitioner requested see a doctor for his back pain and his blood pressure. Id. at 99–100. He was seen on April 22 by a nurse practitioner, who provided pain medication and ordered a number of additional tests. Id. at 101–02. These tests revealed Petitioner had been exposed to hepatitis A at some point in the past, which was discussed

with Petitioner, and he was advised to increase his fluid intake. Id. at 103–08.  On May 4, 2020, Petitioner received a COVID-19 antibody test, which indicated that he was positive for antibodies indicating that Petitioner was likely in the process of recovering from COVID-19. Id. at 109.  At that time, Petitioner did not have a fever or other symptoms of COVID-19, but was in any event moved into quarantine for fourteen days. Id.  Petitioner appears to have recovered and been removed from quarantine and placed back into a general housing unit. *See* ECF No. 13-2 at 4–5; ECF No. 21 at 2.

In support of his petition and motion for a restraining order, Petitioner has submitted two certifications from a proposed medical expert, Dr. Robert Greifinger. *See* ECF No. 1-4; ECF No. 14-1.  In his certifications, Dr. Greifinger contends that Petitioner's hypertension places Petitioner at "very high risk of severe complications or death from COVID-19" notwithstanding the fact that his condition is well controlled by medication. ECF No. 14-1 at 2–3.

In response, the Government has supplied two certifications from their own proposed expert, Dr. Brian J. Cassidy. ECF No. 12-1.  In his certification, Dr. Cassidy observed that Petitioner's hypertension is well controlled by his medication, and in any event noted that while some studies suggest that hypertension "may [cause] an increased risk of severe complications," he did not believe that Petitioner was at any increased risk. ECF No. 12-1 at 4–8.  Dr. Cassidy further noted that, at the time he prepared his certification in May, the Centers for Disease Prevention and Control ("CDC") did not list hypertension alone as a factor placing individuals at high risk (*see* id. at 7), and the Government has further noted that in its late June update to its risk factor guidance, the CDC stated that, in light of limited data, those with hypertension "might be at an increased risk for severe illness from COVID-19." ECF No. 21 at 1.

## II. DISCUSSION

### A. Legal Standard

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted). In order to establish that he is entitled to injunctive relief in the form of a temporary restraining order,[1] Plaintiff must

> demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998) (as to a preliminary injunction); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990).

*Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012). Plaintiff, as the party seeking a temporary restraining order, must first demonstrate a "reasonable probability of eventual success in the litigation." *Bennington Foods, LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation and quotation marks omitted). To satisfy this

---

[1] The Third Circuit has recently reiterated that the relief available via a temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," and that injunctive relief going beyond maintaining the status quo, such as the outright release of a detained alien, must instead normally be obtained through a motion seeking a preliminary injunction. *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160-62 (3d Cir. 2020). The standard that applies to the grant of a temporary restraining order is essentially identical to that which is applied when a party seeks a preliminary injunction other than the requirement that a preliminary injunction can only be issued after an adversary has been provided notice and an opportunity to be heard. This Court's reasoning is therefore equally applicable to the extent that Petitioner's motion is seeking a temporary restraining order or a preliminary injunction, as the motion refers to both forms of injunctive relief at times. *See Wincup Holdings, Inc. v. Hernandez*, No. 04-1330, 2004 WL 953400, at *2 (E.D. Pa. 2004) ("[T]he standard for determining the applicability of a temporary restraining order is identical to the test for determining the applicability of a preliminary injunction."); *see also Ward*, 2012 WL 2341499 at *1.

requirement, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Ward*, 2012 WL 2341499 at *2 (quoting *Oburn v. Sapp*, 521 F.2d 142, 148 (3d Cir. 1975)).

To the extent that Petitioner's requested relief is immediate release from detention, the Third Circuit has historically authorized district courts reviewing habeas petitions by convicted prisoners to enter an order granting bail pending the resolution of the petitioner's habeas claims under certain extraordinary circumstances. *See, e.g., Lucas v. Hadden*, 790 F.2d 365, 367-68 (3d Cir. 1986). As bail pending a decision on a habeas petition is an extraordinary form of relief, it will only be available where the petitioner raises "substantial constitutional claims upon which he has a high probability of success, and . . . when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *In re Souels*, 688 F. App'x 134, 135 (3d Cir. 2017) (quoting *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992).

**B. Analysis**

In his motion, Petitioner argues that he should be released from immigration detention because he has a high likelihood of success on his conditions of confinement claims – specifically his claims that he has been subjected to punitive conditions of confinement without a supporting conviction and that the facility in which he is detained and its staff have inadequately responded to his medical needs in light of his medical history and the threat of COVID-19. The Third Circuit recently reiterated the standards applicable to such claims in its decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020). As the Third Circuit explained, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at

325–27. In the absence of a showing that the detention facility's staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens pending the conclusion of removal proceedings, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* Given the Government's strong interest in detaining aliens subject to removal proceedings and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the Government had taken concrete steps aimed at mitigating the threat posed to detainees, notwithstanding pre-existing health conditions which may predispose those detainees to complications should they contract the virus. *Id.* at 327–29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete

7

action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in unfamiliar territory." *Id.* at 329–30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330–31.

Turning to the instant matter, the Government has a legitimate interest in detaining Petitioner, and to show a likelihood of success on the merits of his punitive conditions claim, Petitioner must show either that the Facility and its staff acted with an express intent to punish him or that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of that interest. *Hope*, 927 F.3d at 325–31; *see also Stevenson v. Carroll*, 495 F.3d 62, 67–68 (3d Cir. 2007); *Daniel R.-S. v. Anderson*, No. 20-3175, 2020 WL 2301445, at *5–7 (D.N.J. May 8, 2020). As Petitioner has not alleged an express intent to punish him on the part of Respondents, he must therefore present facts indicating that his current conditions are arbitrary, purposeless or excessive in light of that clear interest in his detention.

Having reviewed the actions taken by the Facility to mitigate and alleviate the threat posed to its detainees by COVID-19, the Court finds that Petitioner has failed to show that his conditions of confinement are arbitrary, purposeless, excessive, or unreasonable. The Court reaches this conclusion as the Facility has taken considerable and substantial steps to mitigate the virus's impact upon its detainee population. These steps include spacing out detainees as much as possible to provide for social distancing, intake medical screenings for all incoming detainees, on-site

nurses at all times and doctors who are on-site sixteen hours a day and otherwise on call, increased nurse visits to housing units, the suspension or limitation of entry into the facility by outside vendors or volunteers, health screenings of employees and others permitted into the facility, the provision of masks and protective equipment to staff and the provision of masks to detainees, the provision of unlimited soap and water access to detainees, increased cleaning and sterilization of the Facility including housing units, and the provision of disinfectants to staff for use to use in between full cleanings. ECF No. 21-1 at 4–16.  The Facility has also developed specific protocols for the treatment of those who are or may be infected with COVID-19 – those with mild symptoms are placed in quarantine in single occupancy cells and treated in-house with daily temperature monitoring, those with more severe symptoms are instead transferred to a hospital for treatment, and those exposed to known cases but who are asymptomatic are cohorted in separate units with "ample room for social distancing" for fourteen days. Id. at 12–14.  The Facility has also used antibody testing to make determinations as to who should be quarantined or placed in a cohorted unit among those who have not presented clear symptoms of COVID-19. *See* ECF No. 10-6.  Those who test positive for antibodies which indicate they are recovering from the virus are placed in quarantine. Id. at 6.  Taken together, these concrete steps taken to mitigate the threat of COVID-19 and treat those infected with the virus clearly show that the conditions under which Petitioner is detained are not arbitrary, excessive, or purposeless, but are instead rationally related to the Government's interest in detaining him.  Petitioner has therefore failed to show that he is likely to succeed on the merits of his conditions of confinement claim.  *Hope*, 927 F.3d at 325–31; *Daniel R.S.*, 2020 WL 2301445 at *7.

In light of the significant medical treatment and monitoring Petitioner has received, as well as the COVID-19 protocols outlined above, Petitioner has likewise failed to show a reasonable

9

likelihood of success on the merits to the extent he is also claiming that the facility has been deliberately indifferent to his medical needs. Although this Court accepts that the COVID-19 pandemic does pose a threat to detainees that have ongoing medical needs such as hypertension, nothing Petitioner has provided indicates that the Facility and its staff have been deliberately indifferent to Petitioner's medical needs. Instead, the record indicates that the Facility has been attentive to Petitioner's needs and has provided him medication as needed for each issue he raised to the attention of the facility's staff. Medical staff have likewise provided Petitioner with several rounds of diagnostic testing in furtherance of that treatment. Combined with the numerous steps taken to alleviate the threat of COVID-19 discussed above, Petitioner has failed to present facts showing deliberate indifference on the part of medical staff, and it therefore does not appear that Petitioner will be able to show that staff recklessly disregarded Petitioner's health or the risks posed by COVID-19. Petitioner has therefore failed to show a likelihood of success on the merits to the extent he asserts that the staff have been indifferent to his medical needs. *Hope*, 927 F.3d at 329–31; *Daniel R.S.*, 2020 WL 2301445 at *7. As Petitioner has failed to show a likelihood of success on the merits as to his claims, he is not entitled to preliminary injunctive relief at this time and his motion is therefore denied.[2]

---

[2] As Petitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Tate v. Schember*, 809 F. App'x 64, 65–66 (3d Cir. 2020) ("[W]e will affirm because we agree that [plaintiff] has not shown a likelihood of success on the merits for the reasons that the District Court thoroughly explained."); *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 279 (3d Cir. 2020) (reversing grant of preliminary injunction because plaintiff "has not shown a likelihood of success on the merits"); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("Thus, a failure by the moving party to satisfy these prerequisites: that is, a failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction."); *see also Emerson O. C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at *7 (D.N.J. Apr. 22, 2020) (declining to address remaining preliminary injunction factors after determining that movant had not demonstrated a likelihood of success on the merits of his claim).

## III. CONCLUSION

For the reasons expressed above, Petitioner's motion seeking a temporary restraining order (ECF No. 2) is **DENIED WITHOUT PREJUDICE**.  An appropriate order follows.


**DATE**: November 13, 2020

                                            **CLAIRE C. CECCHI, U.S.D.J.**